Case number 23-7176, Michael D. Hurd, Jr. Appellant v. District of Columbia. Mr. Gantzler for the appellant, Ms. Van Zandt for the appellee. Good morning, Your Honors. May it please the Court, my name is Doug Gantzler, and I represent Michael D. Hurd, Jr., the appellant in this case. Instead of the district taking the morally and legally tenable position that it should not be locking up its own citizens without due process, either procedural or substantive, this is actually the third bite at the apple that the district has gotten by appearing before this Court. And this Court has reversed and remanded both instances, and we ask the Court to do so again today. Indeed, the appellee has tried every technicality to advance their position that the appellant, a real human being, should not be able to bring his case before the jury to determine whether, despite a specific order that was given to be released at 7 o'clock on October 2nd, 2011, for his three-weekend sentence for smoking pot, they decided unilaterally to hold him for another two years and put him back in jail with murderers, rapists, pedophiles, and the like. But he had a sentence to serve. It's not like they did that out of the blue. Well, our position, Your Honor, is that he actually did not have a sentence to serve because he had been released four years earlier from his sentence and was at liberty. I thought your position was he had a lesser sentence than what was on the books. The dispute there is, was it 14 months or 27 months? No. He still had time to serve. Our position has been and was from the moment that Mr. Hurd found out at 7 o'clock that he was staying there and he said, I've already done that time, when do I go to court, when do I get my lawyer, that his sentence had expired actually on June 18th, 2010, when the parole agency successfully terminated that sentence. And he'd been out at liberty, he'd been out on the streets, he'd satisfied every component of his time. He was at liberty because of a mistake. He was at liberty because they let him out. He was unaware of the reason for why they let him out from the federal penitentiary. But it was a mistake, but it was not a ministerial mistake. So under, I mean, we get into the factor, but there's a substantive due process argument, which this court has already addressed. The standard in D.C. is, I would say, the Merritt case. And then since Merritt, there's Lewis. That's not the standard of this circuit, it's a district court opinion from 1979. Yes, but it has been, it was cited by this court, by the two panels that have already heard this court have cited it. And since, and it's actually been used in many other circuits, if they're in our brief, it was used in this case at both the habeas hearing and at the district court level. And every argument that's come up here has been about Merritt because it's the seminal case regarding reincarceration. Now, since then, Lewis was decided by the Supreme Court. And that, as your honor knows from previous cases, is about the shock to the conscience standard. Now, the shock to the conscience standard has been around since 1952 in the Rockland case. It got somewhat elevated in the Lewis case. Now, that was a case about a police chase. And what's interesting is this court, in Judge Pillard's opinion, in the first one, it said, still Lewis recognizes that when officials have the luxury of time to make unhurried judgments as they had here, and such extended opportunities to do better are teamed with protracted failure, even to care indifference is truly shocking. If this case were to return to this court, we trust that the parties would focus on whether Merritt should become the law of this circuit. In fact, reading the Lewis shocks the conscience threshold while accounting for the arguably non-existent circumstances. The question is whether Merritt should be incorporated. So what's your argument that we should incorporate Merritt? Well, because Merritt has not been overturned. Merritt's been used as recently as this year by every circuit there is. It didn't rely on substantive due process, though. Excuse me? Merritt did not rely on substantive due process. Well, Merritt is a substantive due process. My understanding is that it's a reincarceration case and whether or not it shocks the conscience. Yes, it is a reincarceration case, but it doesn't rely on substantive due process. It's more like sort of equitable and estoppel principle. Well, that's one of the concerns. So the factors that are set forth in Merritt are whether the results attribute it to the defendant himself and everyone agrees, I think the district concedes that that's the case here, that the action must be more than simple neglect. And we have many instances of that, including the fake face sheet, the three page face sheet that they doctored to say that he actually had a hearing when he had not in this case. Plus all the other. I'm sorry, what's what's your argument for why this was more than neglect? Well, there's a lot of arguments that the one that will ultimately before the jury is that Mr. Seibert, who is essentially a paralegal at the Department of Corrections and unilaterally decided to leave. Well, he asked a supervisor. He has a supervisor. In fact, the district then defended the United States Attorney's Office, defended the case. And so it's it did. It's the district's decision. Ultimately, from a legal standpoint, it just doesn't sound negligent. He you might not like what he decided. But anyway, go ahead. Well, it's more than negligent. But everybody else in the government, the parole, Mr. Heard for three years was in supervised release. Nobody mentioned it. He had contacts with the court. Nobody said he had a sense. I go ahead. Well, the best argument. Well, the biggest. I mean, there's a lot of factors, but the most important factor is the three pages of what's called a face sheet, which which the court can find in the joint appendix in the second joint appendix before this court on a 439 to a 441, which Judge Pillard was very obviously concerned with. And her argument in her opinion about this case, when when the Superior Court judge decided he would not allow the document in. I'm sorry, where is the face sheet? A439? Not in. It's in the joint. It's it's in the joint appendix for the second time. This case was came before the court. Oh, not in our current joint appendix. No, because it never got. We've unfortunately this has been up here three times on summary judgment when we've never gotten to the facts. And that would be probably the biggest piece of evidence that we have. OK, so explain it to us because we haven't seen it. OK, well, yeah, well, it was argued at the habeas hearing. It was actually an attachment to the D.C. Court of Appeals appeal that they took a year and a half to not decide and then mooted it because Mr. Heard was out and then it was discussed in this court at a prior hearing. It what it says is they actually went. They knew they met. They knew they shouldn't have done this. They had time. There was no exigent circumstances. Mr. Heard had shown up the weekend before. That actually say it says that he had to say, I know we shouldn't have done this. Well, it says he had a hearing date on October 3rd, 2011. He was not released the night before on Sunday night at seven o'clock. Everyone got to go home. He didn't. They said, oh, you get to stay for another two years for smoking pot. And now it's they said they had a hearing date on October 3rd, 2011, and a sentencing date, October 5th, 2011. Neither of those things happen and they're on. It's on a D.C. thing. I'm just having trouble understanding your argument. So there's something called a face sheet, like a face. And and it talks about the sentencing notes and the charges. And it's a document from the D.C. Jail. And in that document, it talks about the different charges and what's happened in the case right in the center of the page. They doctored this. And it's signed by. We're not finding any of those facts in this. No, at this. Of course not. But what we should submit to the court is that there are genuine issues of material fact that the jury needs to look at. Assume that we assume for a moment that we are not going to incorporate the merit factors. What's what's the best argument that what the district did here shocks the conscience under Lewis? I mean, here it. You know, arguably, it's just an ordinary, you know, administrative mistake that they corrected. What what's conscience shocking about what the district did? Well, I would submit that any reasonable juror. Would find that somebody who is goes to jail on a court order for three weekends because they had less than two ounces of marijuana. That ends up getting told they're supposed they're now going to stay there for two years with no due process, no pre deprivation hearing under the United States Constitution is there was a final judgment. From from his earlier crimes that he he didn't serve due to an administrative error. Right. But he satisfied the case law, including merit, but that not using merit, but the case law talks about that if you were time at liberty counts toward your sentence. And he was out. He got out in. I mean, this thing started in 2005. How was this? I mean, you know, maybe this isn't a great way to run a railroad, you know, by the district. But why does it, you know, shock the conscience? Well, I would submit that any juror who said who went to jail for a crime that actually is no longer a crime, nor was his original. They go to jail for smoking marijuana. They think they're coming back Sunday. They think they're going to work the next day and they find out they're going to be locked up in D.C. jail with the people that are locked up in the D.C. jail for two years. And you never get to see a judge. You never get to have. Wait, wait, wait. But because he had a sentence to serve, but I don't see how a jury wouldn't find that highly significant that he actually had a sentence to serve. And so they held him to serve the sentence. Well, as there's a number of arguments there. First of all, you have to the case law talks about the inconsistent with fundamental principles of liberty and justice. So the question is, he did not with all due respect. I mean, he did not have a sentence to serve anymore. I understand your argument in that respect to rely on this time at liberty theory, which is that he should get credit for time at liberty and credit that against jail time. And that was rejected in his when he finally had a habeas hearing before Judge Holman. Understandably, it wasn't immediate. It was ten weeks later. But Judge Holman rejected that and relied on Wells and other DCCA cases. Right. So if assuming that we don't buy the time at liberty argument as the Superior Court didn't, where does that leave you? Well, I certainly hope you do, because it the the case law is pretty clear that that is something you should buy. But I think that it leaves us with the idea that somebody who thinks that they are been released properly, the entire government, both federal and local, thinks they've been released properly, has been living their life as a normal citizen who was locked up as an honorably discharged Marine in the first place for having a proper license for a gun in his state of North Carolina at the time. Two years later, that becomes not a crime anymore. And he's still serving a sentence. And then he's locked up for marijuana. Less than two ounces. I would think any juror and certainly where I've talked to about it would believe that this is beyond outrageous and shocks the conscience. And the circumstances here are much worse than the merit. Just the facts. I understand the court is reluctant for whatever reason to rely on merit. But under Lewis, again, the facts are very different. That was a legitimate police conduct. They were they were going after somebody on a high speed chase. This is a reincarceration case. They just can't lock people up and then say, oh, 10 minutes later, as Judge Bates said, in his opinion, could have been it would have been a different if it had been the hearing at the time, could have been a different judge. In fact, it was Judge Von Kahn was assigned to the case. Different judge, different lawyers, different situation. Because Judge Holman, and this goes to your honor's argument, question about the 14 months versus the 24 months. Judge Holman knew that he had actually that Michael Hurd only had 14 months left because he wrote in his opinion that Judge Bates and footnote number six in his original opinion says this is not a dispute. This is a fact. He wrote the time served for each of the cases. So he's only had two more months to serve. I'm sorry. I know my colleagues have other questions. Thank you. Good morning, your honors, and may it please the court. Caroline Van Zyl, on behalf of the District of Columbia. I'd like to start with the proper standard for proving a substantive due process violation, because that standard is extremely high. The Supreme Court has said that only the most experienced  egregious official conduct can constitute a substantive due process violation conduct that shocks the conscience. And as to whether the merit standard can be reconciled with the high bar set forth in Lewis, the answer is that it absolutely cannot. And that is so for several reasons. Two prongs of the merit analysis in particular are just plain inconsistent with modern substantive due process jurisprudence. The first is the prong that says the action of the authorities must amount to more than simple neglect. Even Mr. Hurd concedes in his opening brief that that is not reconcilable with modern substantive due process jurisprudence. It doesn't meet the required level of egregiousness. And the other prong of merit that's just irreconcilable with modern substantive due process jurisprudence is the requirement that the action be inconsistent with fundamental principles of liberty and justice. As the Fourth Circuit said in Hawkins, that fails to embody the full stringency of Lewis's requirement that an executive act must be not only wrong, but egregiously so. And applying that proper standard to the conducted issue here, it simply doesn't meet the bar of shocking the conscience. And and one way to know that is to look at other analogous cases that have addressed the same issues of erroneous release and reincarceration. DC doesn't challenge here the district court's holding that Mr. Hurd has a protected liberty interest. So is it the district's position that that a person who was mistakenly released from from prison has a protected liberty interest in? No, Your Honor. Freedom. I'm interested in why. So, I mean, that's the position that the district has. And it seems that. You know, I mean, is that the district's position? That is not the district's position, Your Honor. We did move for summary judgment on the procedural due process claim, and we did not move for summary judgment on the liberty issue in particular. But there could be a lot of reasons for that, including perhaps there might be disputes of material fact around that. Well, didn't the first appeal of Hurd, didn't Judge Pillard say that there could be a liberty interest here? Could be, I think, is the operative language. Yes. Now, in the district court on summary judgment, we didn't take issue with that. We took issue with the kind of process that was due, whether it needed to be pre or post deprivation. Judge Bates did not grant a summary judgment on that ground. We have not renewed those claims before this court. So I don't think that issue is before the panel. That said, there was no renewed cross motion for summary judgment. So I also don't think that it can be treated as conceded. Again, I think it's just an issue that in the event of a remand, which, of course, we hope to avoid, could go to a jury. So turning back to how the Lewis test applies in circumstances like this, I think the Fourth Circuit in Hawkins got it exactly right. When you're talking about erroneous release and reincarceration, you're talking about a phenomenon that is surprisingly widespread and recurring in both state and federal penal systems. And in this context, the routine, seemingly invariable executive practice has been to reincarcerate, rejecting any claim of entitlement to freedom, no matter what the circumstances. And in Lewis, the Supreme Court admonished lower courts to come to an understanding of traditional exercise of executive behavior of contemporary practice and of the standards of blame generally applied to them. And so when we're talking about such a widespread and routine practice, even if unfortunate in a circumstance like that, the standard of blame required to show a violation by an executive actor is extraordinarily high. It's certainly higher than the merit standard. The Eighth Circuit in Bone Break concluded that it was so high that it would be beyond libertin difference, which is only sort of a mid-level standard of fault. And so, again, in terms of substantive due process, we would urge this court to side with the many other courts that since Lewis have held that. I can just ask you a question about how often does this occur, this type of error and, you know, in litigating cases like this, has the district put in place any procedures to. To, you know, address this kind of problem. So these sorts of errors, according to Mark Seibert's deposition testimony, are exceedingly rare. Anything like this happens sometime between maybe two to four times per year. And when I see something like this, I don't necessarily. In the district, that was his estimate at the time that said that includes situations where a district detainer was perhaps missed or ignored by another jurisdiction. We're not just talking about miscommunications between the Bureau of Prisons and the Department of Corrections when we're talking about that still very small number. Now, at the time, there was no procedure or policy for exactly how to deal with this problem. I can say this is not in the record, but in having conversations with my client, if this were to occur today, the way the Department of Corrections would handle it would be to have a conversation with the superior court to alert the parties to the case. And then the superior court holds some sort of special hearing and a warrant either issues or does not issue. So that is how it's handled these days. Obviously, at the time these events unfolded, there was not that same practice. Yes. So it's just a more prompt hearing. It's not a pre-deprivation hearing, probably. It's just a more sooner than 10 months. I don't have the amount of clarity that I would wish to tell you, whether it's pre-deprivation, post-deprivation. It may depend on the circumstances. But my understanding is that there is a hearing in front of the judge to determine whether someone is owed credit for time at liberty, whether there's been some sort of mistake, whether the person has served their sentence, that sort of thing. So if there are no further questions on substantive due process, I'm happy to turn to procedural due process. The issue on procedural due process is whether or not the district sufficiently showed that there was no prejudice from the alleged lack of procedural due process. We submit that they have. Mr. Hurd has two preserved theories as to why there might be some prejudice. Both fail for multiple reasons. We can start with the time served credit theory, which fails soundly, I think, on the merits. Other states have looked at this issue as to whether you should have your time served counted once or twice or three or four, or as in this case, Mr. Hurd alleges, five times. They have uniformly, as far as I can tell, and as far as Judge Bates could tell, held that time served before sentencing is counted only once. We've also put in the record a sentence computation manual that says the same thing and a declaration from the district. A DOC official saying your time served counts once. It doesn't count towards each of your individual counts. It counts towards the term of your sentence. The DCCA hasn't resolved that conclusively. So should we be the ones to resolve that? Isn't it easier to say that this makes no difference because. He. If we're going to the time served thing, it's either 14 months or 27 months, and he got his hearing in 10 months, so there's no prejudice from his failure to raise this particular argument. Absolutely. That is also on the menu of options. I would just say that because the practice of the states is so uniform, there would be nothing remarkable about this court predicting what the D.C. Court of Appeals would say and predicting specifically that it would side with the majority of states. But if this court feels that it is easier to simply say there is no prejudice because before this claim would have been fully developed, he had process in any event. That is certainly a path you could take. You could also take the path of saying that this claim is barred by Heck versus Humphrey. Judge Bates so found and there was absolutely nothing in Mr. Hurt's opening brief to contest that we would have to resolve whether Heck versus Humphrey applies to people who are no longer currently. No, Your Honor, I don't think you actually would have to resolve the split to rule for us on Heck. And that's because Mr. Hurt has at no at no point invoked an exception to the Heck bar. He simply said that Heck doesn't apply to him. That we believe is incorrect based on Edwards versus Balasag, which says if you're making a procedural due process challenge to the duration of your confinement, in that case, it was a challenge to procedural due process that ended up depriving someone of good time credits that is barred by Heck. Unless and until the sentences or the term of incarceration is somehow otherwise invalidated, if Mr. Hurt. So you propose that we would write an opinion that said Heck applies and we don't have to resolve the issue about whether it applies to people who are not incarcerated because he hasn't raised it. That's exactly right. He didn't raise it below. He didn't raise it in his reply brief, which is the only brief in which he addressed Heck on appeal. So I think it's squarely forfeited. And if the court wanted to rule on Heck, I think it would be a simple path to take. And I don't think that the court would have to weigh in on the split. As to Mr. Hurt's time at liberty theory, again, there are three different options on the menu for resolving that claim against him. There's the Heck bar, which applies for all the same reasons. There is the fact that if he had had process earlier, the result would have been the same. He would have been denied credit for time at liberty. And we know that because he did, in fact, have a post deprivation habeas hearing where that was the result. Beyond that, Judge Hovell and Judge Bates also looked at this time at liberty claim on the merits. Both found that it was lacking in support, given the D.C. Court of Appeals rejection of a broad doctrine of credit for time at liberty. We're out of time. Is there any further questions? Thank you. We would ask the court affirm. Thank you. I'd like to just address really one major point, which is merit, which is a substantive due process claim, at least was treated as such by Judge Bates in his opinion, and it was actually adopted by the DCCA and Wells as well. And so that's and that was in 2002. And there's nothing inconsistent about merit and Lewis at all. In fact, they are married. They can be married. This court has found that they can be married together. The. And how do you reconcile the shocks, the conscience standard with more than mere negligence? Well, shocks, the conscious standard was actually used in merit as well. And like I said, it's been around since 1952. It has to be more than just mere negligence. For example, some of the things that were talked about during the conscience is always more than mere negligence. So doesn't that mean that more than mere negligence is not the standard? Exactly. More than mere negligence is the standard. It has to be both. It has to be something more than just like a negligent clerical error. It has to be. So the question is, why is that part of the standard? If the standard is also shocks, the conscience, because. More than mere negligence is completely subsumed by shocks, the conscience. So it can't be the merit standard because merit has this. More than mere negligence thing, which is irreconcilable with shocks, the conscience. If they said, I really don't like this person, I'm going to keep him in jail for next 30 years, that would be above mere negligence, it would be intentional. So there's there's a spectrum. And I think and I would just say the issue, Mr. Ganser, anything that's more than mere negligence is going to shock the conscience. So there's no room for a standard that requires more than mere negligence. Your Honor, it's actually a question for the jury. And given all the facts of the case and the standard, is this a question for the jury? No. How how to apply that subjective standard? What is my question? My question is, how do you reconcile those two legal standards? Why? Why can they be in the same legal framework? Because they're not reconcilable. Because in order for the jury to discern what is shocking the conscience, they use the factors that are in merit. And the district actually acknowledges that in their own brief, where they say that there's a spectrum. After all, government misconduct sits on a spectrum in Lewis. At one end is negligence, your point, which is categorically beneath the threshold that's quoted of conscious shocking behavior. And at the other end is unjustifiable intentional conduct, which, quote, is the sort of official action most likely to rise to the conscious level second. But in the middle range, there are closer calls where recklessness or gross negligence may cross the line. And that's where we are here of those. And if they don't shock the conscience, then they don't suffice under Lewis. Correct. And they were found not guilty. And so that's not part of the legal framework. I guess I'm just having a hard time understanding, Your Honor. If if you walked if I guess if you walked in front of a jury and argued this. Yeah. Thank you. Thank you. Cases.
judges: Rao; Pan; Ginsburg